UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENEE LOU NUTT,                                    Case No. 20-11674

                        Plaintiff,                 Gershwin A. Drain
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL                             Curtis Ivy, Jr.
SECURITY,                                          United States Magistrate Judge

                        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)**

Plaintiff Renee Lou Nutt brings this action pursuant to 42 U.S.C. § 405(g),

challenging the final decision of Defendant Commissioner of Social Security

("Commissioner") denying her applications for Disability Insurance Benefits and

Supplemental Security Income under the Social Security Act (the "Act"). This

matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the

Commissioner's cross-motion for summary judgment (ECF No. 14), Plaintiff's

reply (ECF No. 15) and the administrative record (ECF No. 10).[1]

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's

---

[1] References to the administrative record are identified as "Tr."

motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner's decision.

## I. DISCUSSION

### A. Background and Administrative History

Plaintiff alleges her disability began on August 1, 2016, at the age of 48. (Tr. at 16, 25). She filed an application for disability insurance benefits and supplemental security income on March 22, 2018. (Tr. at 16). In her disability report, she listed a number of ailments which negatively impacted her ability to work. (Tr. at 212). The ailments included: rheumatoid arthritis, lupus, dyslexia issues, and anxiety. (*Id*.). Her application was denied on June 5, 2018. (Tr. at 16).

Following the denial of benefits, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (Tr. at 115-16). On May 1, 2019, ALJ Amy L. Rosenberg held a hearing, at which Plaintiff and a vocational expert (VE), Heather Benton, testified. (Tr. at 34-72). On May 24, 2019, ALJ Rosenberg issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 16-27).

Plaintiff submitted a request for review of the hearing decision. (Tr. at 169). However, on May 19, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5). Thus, ALJ Rosenberg's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 24, 2020.

**B.     The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2016, the alleged onset date. (Tr. at 18). At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: "osteoarthritis; rheumatoid arthritis; cyst on bone of right hand; bilateral plantar calcaneal spurs; varicose veins; and obesity." (*Id.*).  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. at 19). **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC:

> to perform light work [*i.e., exertional limitations*] . . . . In addition, she can occasionally climb, balance, stoop, kneel, crouch, and crawl [*i.e., postural limitations*].  She can frequently reach bilaterally, except that she cannot reach overhead with her right upper extremity.  She can frequently handle and finger bilaterally [*i.e., manipulative limitations*].  She can tolerate just occasional exposure to extreme cold, extreme heat, high humidity, and vibration.  She cannot work at unprotected heights and cannot operate dangerous moving machinery [*i.e., environmental limitations*].

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(*Id*. at 19).  At **Step 4**, the ALJ determined Plaintiff was unable to perform any past relevant work.  (*Id.* at 24-25).  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as handler, equipment cleaner, and inspector.  (*Id.* at 26).  Therefore, the ALJ concluded Plaintiff had not been under a disability, as defined in the Social Security Act, since August 1, 2016, the alleged onset date.  (*Id.*).

### C.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or medically equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520,

416.920.[3]  The Plaintiff has the burden of proof at steps one through four, but the

burden shifts to the Commissioner at step five to demonstrate that,

"notwithstanding the claimant's impairment, he retains the residual functional

capacity to perform specific jobs existing in the national economy." *Richardson v.*

*Sec'y of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

---

[3] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless indicated otherwise.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E.    Analysis**

Plaintiff raises the following arguments for remand of the Commissioner's decision: (1) she should have been found disabled from the time of her 50th birthday in accordance with medical-vocational rule 202.09 in light of her illiteracy, (2) her impairments met or medically equaled Listings 1.02A and/or 14.09 at Step Three, and (3) the ALJ did not consider the full impact of her obesity on her residual functional capacity.  (ECF No. 12).  In response, the Commissioner argues (1) medical-vocational rule 202.09 does not apply to this case, (2) the ALJ's Step Three decision is supported by substantial evidence, and (3) the ALJ did not commit prejudicial error in her evaluation of Plaintiff's obesity.  (ECF No. 14).

   1.  Illiteracy and Medical-Vocational Rule 202.09

Plaintiff asserts she is illiterate and had only (functionally) unskilled past relevant work, and thus she became disabled under medical-vocational rule 202.09 on the date she turned 50 years old—December 13, 2017.  The Commissioner argues substantial evidence supports the ALJ's reliance on medical-vocational rule 202.11 as a framework for determining disability when Plaintiff reached her 50th birthday because she had some semi-skilled past relevant work.

The medical-vocational rules, or "grid rules," found in Appendix 2 to 20 C.F.R. Part 404, Subpart P, provide a framework for determining disability.  As the Sixth Circuit has explained,

> In general, where the characteristics of a claimant exactly match the characteristics in one of the rules of Appendix

> 2, the guidelines determine whether significant numbers of other jobs exist for the person or whether that person is disabled. However, in a situation where impairments do not precisely match any specific rule, the guidelines are used as a framework to determine whether a claimant is disabled.

*Range v. Soc. Sec. Admin.*, 95 F. App'x 755, 757 (6th Cir. 2004) (internal citations omitted).

Grid rule 202.09 directs a finding of "disabled" to an individual who meets the following requirements: a maximum sustained work capability limited to light work, age 50 to 54 (closely approaching advanced age), with an education of "illiterate or unable to communicate in English," and whose previous work experience was "unskilled or none." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.09. Grid rule 202.11, the rule the ALJ used as a framework when Plaintiff reached age 50, directs a finding of "not disabled" to an individual who is between age 50-54, had limited or less education but is not illiterate, and who had skilled or semi-skilled past work but with skills that are not transferable. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.11.

The Commissioner argues Plaintiff's literacy or illiteracy is irrelevant to the question of disability because she had some past relevant work that was semi-skilled, and thus takes this case out of Rule 202.09. Plaintiff argues because she cannot perform the same semi-skilled work now, and because of her age, her past relevant work should be considered unskilled under the medical-vocational rules.

According to the regulations, skilled or semi-skilled past relevant work should be considered unskilled if the claimant has no transferrable skills. 20 C.F.R. §§ 404.15659(a) and 416.965(a) specifically state:

> If you have acquired skills through your past work, we consider you to have these work skills unless you cannot use them in other skilled or semi-skilled work that you can now do. If you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled.

*See also Watt v. Colvin*, 2016 WL 6651885, at *3 (E.D. Mich. July 13, 2016) (citing *Winstead v. Comm'r of Soc. Sec.*, 2008 WL 819073, at *5 (S.D. Ohio Mar. 25, 2008)). Here, the ALJ found "transferability of skills is not material to the determination of disability" because the medical-vocational rules support a finding of "not disabled," whether or not Plaintiff has transferable skills. (Tr. at 25-26). Thus, the ALJ did not conclude that Plaintiff had no transferable skills, but did conclude Plaintiff could perform only unskilled work now. (Tr. at 26). Since Plaintiff cannot perform any skilled or semi-skilled work, pursuant to the regulation her past work should be considered the same as unskilled.[4]

---

[4] By relying on Rule 202.11, it appears the ALJ adequately accounted for Plaintiff's non-transferability of skills because that rule specifically applies to a person with past skilled or semi-skilled work *with skills that are not transferable*. Neither party addressed the inconsistency between Rule 202.11 accounting for skills that are not transferable and the regulations directing past skilled work be considered unskilled if skills are not transferable. The undersigned need not take up that issue because, as addressed below, whichever way Plaintiff's past work is characterized does not alter the conclusion that Rule 202.09 does not apply because Plaintiff did not adequately demonstrate she is illiterate.

However, whether Plaintiff's past relevant work should be considered unskilled is of no moment here, as Plaintiff has not demonstrated reversible error in the ALJ's conclusion that she is not illiterate. Medical-vocational rule 202.09 is predicated upon a person who is illiterate or unable to communicate in English. "Illiteracy" is defined in the regulations as "the inability to read or write." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). A claimant is considered illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.* "Generally, an illiterate person has had little or no formal schooling." *Id.*

Substantial evidence supports the ALJ's decision which at least implicitly, if not expressly, concluded Plaintiff was not illiterate. Specifically, the ALJ concluded Plaintiff had "a marginal education and is able to communicate in English," and thus was not illiterate.[5] (Tr. at 25). "Marginal education means ability in reasoning, arithmetic and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education." 20 C.F.R. § 404.1564(b)(2). Plaintiff, who completed school through the fifth grade, does not dispute her education being

---

[5] It is at this point in the ALJ's decision where the ALJ would indicate the claimant is illiterate, if that is the case, under 20 C.F.R. §§ 404.1645 and 416.963.

considered "marginal."  In the regulations, a "marginal education" is distinguished from "illiteracy."  20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1).

Moreover, Plaintiff did not cite illiteracy as limiting her ability to work, and did not expressly argue at the administrative hearing that she was illiterate.  In fact, as part of the record before the ALJ, Plaintiff submitted her personal journal which contains daily handwritten entries from June 18, 2018 to April 25, 2019.  (Tr. at 282-318).  The entries contained within the journal describe Plaintiff's physical conditions and limitations for the day.  (*Id.*).  Not only are the entries handwritten, and thus captured without the benefit of utilizing a word processing device, but they include more advanced words (i.e. words containing more than 4 letters).  Similarly, she completed her own Adult Function Report which required her to give handwritten responses to questions about her daily activities and functioning.  (Tr. at 246-53).  Hence, it is not surprising the ALJ did not undertake an analysis of Plaintiff's literacy—she did not claim to be illiterate and the evidence does not suggest illiteracy.  Nonetheless, the ALJ still made findings relevant to literacy in accordance with the medical-vocational rules, as discussed above.

Further supporting the ALJ's conclusion is Plaintiff's testimony at the administrative hearing.  Plaintiff testified she could read three- or four- letter words despite dropping out of school at age 16 following her completion of the fifth grade.  (Tr. at 38, 59).  In other words, she can read simple messages.  It is also

clear she writes larger words, as demonstrated in her journal and adult function report. (Tr. at 282-318, 246-53). Moreover, Plaintiff's history of working two semi-skilled jobs belies her assertion that she is illiterate. According to the Dictionary of Occupational Titles, both her past semi-skilled jobs required a reading ability described as follows: "Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes." *Dictionary of Occupational Titles*, 726.684-062, 1991 WL 679636 (1991); *DOT*, 726.687-026, 1991 WL 679636 (1991). Plaintiff has not asserted she could not perform her past semi-skilled work at that reading ability or that her work was accommodated so she would not have to do so.

Finally, there is no record from a medical or educational professional discussing or even acknowledging an inability to read. Based on the evidence (or lack thereof) in the record, the ALJ's conclusion that Plaintiff had a marginal education and was able to communicate in English, and thus was not illiterate, is supported by substantial evidence. Accordingly, the ALJ's decision to rely on Rule 202.11, rather than 202.09, is supported by substantial evidence.

Plaintiff submitted a "Notice of Completion" of an "Adult Basic Education" test from Michigan Works to the Appeals Council dated June 17, 2019, *after* the ALJ's decision. (Tr. at 12). Michigan Works provides job training and

employment assistance programs to Michigan residents. The staff member who presumably conducted the test indicated Plaintiff scored in the first-grade reading level. (Tr. at 12). No additional information regarding the administered test was provided. Plaintiff relies on this test result to support the contention she is illiterate. While it was submitted after the ALJ issued the decision, she urges the Court to consider this new evidence in performing its review. This test is problematic for a number of reasons, as discussed below.

The Sixth Circuit "has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). However, the Court may remand the case for further administrative proceedings if a plaintiff can show the evidence is "new" and "material" and that she had "good cause" for not presenting it in earlier proceedings. *Id.* at 357. This is referred to as a sentence six remand under 42 U.S.C. § 405(g). Pursuant to § 405(g), "evidence is only new if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Id.* (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citing

13

*Sizemore v. Sec'y of Health & Human Servs*., 865 F.2d 709, 711 (6th Cir. 1988)).  A plaintiff shows "good cause" by demonstrating a reasonable justification for failing to acquire and present the evidence for inclusion in the ALJ's hearing.  *Id*.  "'[G]ood cause,' . . . is not established solely based on the fact that the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test."  *Estrada v. Comm'r of Soc. Sec.*, 2017 WL 4106247, at *5 (E.D. Mich. Aug. 4, 2017) (citing *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).

Although the evidence is clearly "new," Plaintiff has not sufficiently demonstrated it would have been material to the administrative decision.  Plaintiff failed to articulate why the Social Security Administration should accept as conclusive evidence of illiteracy a reading test conducted by a Michigan Works employee.  For one thing, the record lacks evidence from a medical or educational professional opining on Plaintiff's reading ability to corroborate the results.  "The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" that satisfies the Agency's durational requirement.  20 C.F.R. § 404.1505(a).  The Agency requires "evidence from 'acceptable medical sources' to establish the existence of a medically determinable impairment."  SSR 06-3p, 2006 WL 2329939 (2006).  Without more, a single test performed by a Michigan Works employee does not

establish a medically determinable impairment.  *See Smith v. Comm'r of Soc. Sec.*, 2015 WL 899207, at *22-23 (E.D. Mich. Mar. 3, 2015) ("although plaintiff has been diagnosed with a learning disorder and borderline intellectual functioning and found to have 'low reading skills,' plaintiff has not submitted any diagnosis or opinion by a medical or educational professional that he is functionally illiterate"). Furthermore, the single page document provides only the test results; there is no information about the test conducted or about the person who administered the test. As a result, the extent to which the test results can be relied on is unclear.

But even considering the Michigan Works first-grade-reading-level results, the ALJ's decision likely would not have been different.  "A numerical grade level is properly used to determine a claimant's educational abilities *only if* contradictory evidence does not exist."  *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 450 (6th Cir. 1990) (citing 20 C.F.R. § 404.1564(b)) (emphasis added). Discussed more fully above, there is contradictory evidence in this case: (1) Plaintiff was able to perform two semi-skilled jobs in the past which required the ability to read; (2) Plaintiff was able to handwrite a journal of daily entries and her function report responses, (3) Plaintiff's fifth grade education is considered "marginal education," which is distinguished from "illiteracy;" and (4) she testified she could read three- or four- letter words.  Even if a vocational test found her reading ability to be at the first-grade level, the other evidence regarding her

15

literacy (and lack of medical or educational evidence on the subject) is substantial evidence in support of the ALJ's decision.

Assuming Plaintiff had established the evidence was material, she did not have good cause for submitting it after the ALJ reached a decision. "[G]ood cause contemplates . . . more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Helton v. Comm'r of Soc. Sec.*, 2016 WL 6080213, at *10 (E.D. Mich. Feb. 19, 2016) (quoting *Haney v. Astrue*, 2009 WL 700057, at *6 (W.D. Ky. Mar. 13, 2009)). Plaintiff asserts she did not undertake the testing "until after the unfavorable decision caused her to seek help from Michigan Rehabilitation Services." (ECF No. 12, PageID.521). In other words, she obtained the testing as a response to the ALJ's decision, which falls woefully short of meeting the good cause standard. There appears to be no reason why Plaintiff could not have taken the test before the administrative hearing, or asked at the hearing for an extension of time to obtain additional evidence regarding literacy. Obtaining evidence to prove disability in response to an unfavorable decision is not "good cause" for a sentence six remand. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (observing that the grant of automatic permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process); *Downs v. Colvin*, 2016 WL 1271477, at

16

*5 (E.D. Ky. Mar. 31, 2016) ("If good cause were not a requirement, every claimant who received an unfavorable ALJ opinion could obtain additional medical examinations and seek remand based on new evidence.").

For these reasons, the undersigned suggests there is no reversible error in the ALJ's reliance on medical-vocational rule 202.11.

On a related note, in her reply brief Plaintiff stated, without elaboration, her "dyslexia was never considered by the ALJ and it should have been." (ECF No. 15, PageID.561). This "argument" should not be addressed for two reasons. First, it was raised for the first time in reply, and thus should not be considered. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived."). Second, the manner in which Plaintiff raised the "argument" is wholly insufficient to warrant analysis by the Court. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to

17

. . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) (citation omitted)).

        2.     Listings 1.02(A) and 14.09(A)

Plaintiff next argues the ALJ's determination that her impairments do not medically equal listings 1.02(A) or 14.09(A) is not supported by substantial evidence.  (ECF No. 12, PageID.521-25).

    The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant.  *See Foster*, 279 F.3d at 354.  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original); *see also Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan*, 493 U.S. at 530.  An impairment or combination of impairments is considered medically equivalent to a listed impairment "if the

symptoms, signs and laboratory findings as shown in medical evidence are at least

equal in severity and duration to the listed impairments." *See Land v. Sec'y of*

*Health & Human Servs*., 814 F.2d 241, 245 (6th Cir. 1986) (per curiam); 20 C.F.R.

§§ 404.1526(b), 416.926(b).

Listing 1.02(A), Major Dysfunction of a Joint (due to any cause), states the

following:

> Characterized by gross anatomical deformity (e.g.,
> subluxation, contracture, bony or fibrous ankylosis,
> instability) and chronic joint pain and stiffness with signs
> of limitation of motion or other abnormal motion of the
> affected joint(s), and findings on appropriate medically
> acceptable imaging of joint space narrowing, bony
> destruction, or ankylosis of the affected joint(s).
>
> With:
>
> A. Involvement of one major peripheral weight-bearing
> joint (i.e., hip, knee, or ankle), resulting in inability to
> ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02.  Listing 1.00B(2)(b) describes

what an inability to ambulate effectively means in the regulations:

> Inability to ambulate effectively means an extreme
> limitation of the ability to walk; i.e., an impairment(s)
> that interferes very seriously with the individual's ability
> to independently initiate, sustain, or complete activities.
> Ineffective ambulation is defined generally as having
> insufficient lower extremity functioning (see 1.00J) to
> permit independent ambulation without the use of a
> hand-held assistive device(s) that limits the functioning
> of both upper extremities.

Listing 14.09(A), Inflammatory arthritis, requires the following:

A. Persistent inflammation or persistent deformity of:

1. One or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively (as defined in 14.00C6).[6]

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.09.  Listing 14.00C(6) defines

inability to ambulate effectively the same as in 1.00B(2)(b), provided above.

Plaintiff argues her rheumatoid arthritis and osteoarthritis, combined with

her obesity, created an inability to ambulate effectively, and thus she insists she

medically equals one or both of the listed impairments.  In support of her

argument, Plaintiff relied on her subjective statements rather than objective

medical evidence.  She pointed to her testimony at the administrative hearing that

she can only walk one block before needing to rest due to ankle pain and bone

spurs in her feet.  She also testified her physicians certified she could walk less

than 300 feet, which qualified her for a handicapped parking certificate.  (ECF No.

12, PageID.525; Tr. at 61).  Neither the certificate nor doctors' notes related to the

certificate are in the record.  Plaintiff cited her complaints of symptoms she made

during doctor visits.  (*Id.* at PageID.524-25) (citing Tr. at 439, 465).  In addition,

she cited her mother's third-party function report in which her mother maintained

Plaintiff's physical activities were "almost nonexistent" because of pain in her

---

[6] Plaintiff did not argue she meets or medically equals Listing 14.09(A)(2).

joints.  (*Id.* at PageID.525) (citing Tr. at 230-237).  She also cited her journal as evidence of suffering pain and limitation daily.  Finally, she provided the Mayo Clinic's list of symptoms associated with rheumatoid arthritis and osteoarthritis; she asserted she complained of those symptoms to her physicians.  (*Id.* at PageID.523-24).  However, it is not altogether clear that she suffered from all the symptoms listed as common symptoms for those conditions.

The advancement of her subjective complaints does little to meet her burden of "present[ing] specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present[ing] medical evidence which describes how the impairment has such equivalency."  *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004).  Plaintiff's failure to point to specific medical findings in support of her argument is reason to uphold the ALJ's decision.

Despite Plaintiff's failure to marshal evidence in support of her argument, having reviewed the medical evidence it appears the ALJ's decision at Step Three is supported by substantial evidence.  Plaintiff cited two medical records to support her complaints of joint pain.  Those two records, while reinforcing her assertion she suffers from inflammatory disease, also provide evidence in support of the ALJ's decision.  The first is a record from her treating rheumatologist, Dr. Haggins, dated June 5, 2018.  During that visit, Plaintiff complained of moderate

joint pain and stiffness in her hands and difficulty walking and getting dressed. (Tr. at 465).  However, on objective examination, Dr. Haggins found the joint exam was "normal with full range of motion of spine, shoulders, elbows, wrists, fingers, hips, knees and ankles; no active swelling, tenderness or synovitis at any joint.  No soft tissue nodules except synovial swelling."  (Tr. at 467).  Although Dr. Haggins found no "active swelling," he did note swelling and tenderness in some joints, but did not list which joints.  He prescribed Prednisone to treat her rheumatoid arthritis.  (Tr. at 468).  The other medical record dated March 19, 2019, roughly two months before the ALJ's decision, is also from Dr. Haggins.  On March 19, 2019, Plaintiff complained of right shoulder pain and decreased range of motion.  She indicated difficulty with activities of daily living (ADLs) "moving her right hand."[7]  (Tr. at 439).  As was the case at the June 2018 visit, on objective examination Plaintiff had normal joint exam with full range of motion in her joints, including her hips, knees, and ankles.  Dr. Haggins noted three swollen joints and one tender joint, but again did not list these joints.  (Tr. at 442).  Dr. Haggins increased her Methotrexate prescription.  (Tr. at 443).

These two medical records do not raise the suggestion that Plaintiff's impairments medically equal the subject listings, i.e. that Plaintiff was unable to

---

[7] It is not clear why Plaintiff cited to these two records to show complaints of limitation in weight bearing joints.  She complained of hand and shoulder issues, which do not themselves demonstrate an "inability to ambulate effectively."

ambulate effectively.  Plaintiff provided no authority which suggests complaints of difficulty walking and some noted joint swelling are medically equivalent to an inability to ambulate effectively under the listings.  The other medical records from Dr. Haggins are largely the same as the two discussed above, with the same subjective complaints and same or improved objective findings.  (Tr. at 445-48, 451-53, 456-58, 470-72).  For example, in November 2018, Plaintiff reported her symptoms had improved and she had no limitation in activities of daily living.  (Tr. at 451).  She also had no joint swelling or tenderness.  (Tr. at 453).  In January and March 2019, she reported only upper extremity pain and limitations.  (Tr. at 439, 445).  The objective joint examination was normal except Dr. Haggins found one tender joint (unspecified) in January and three swollen joints and one tender joint (unspecified) in March.  (Tr. at 442, 448).

In addition to Dr. Haggins' medical records, Plaintiff presented to Henry Ford Center for Family for primary care.  On one occasion, on January 15, 2018, Plaintiff presented with complaints of left ankle and toe pain.  (Tr. at 325).  She described the pain as a burning pain, but denied an inability to bear weight, loss of motion, and numbness; however, she noted symptoms were aggravated by weight-bearing.  (Tr. at 326).  She was diagnosed with plantar fasciitis, varicose veins in the left lower extremity with edema, and pressure ulcer in the toe of her left foot. The physician encouraged her to "do exercises" and prescribed compression

stockings for the varicose veins.  (Tr. at 327).  Imaging done on her left and right feet/ankles showed periarticular erosions about the right first metatarsophalangeal joint (but Plaintiff had no complaints about her right foot or ankle) and "moderate bilateral plantar calcaneal spurs."  (Tr. at 357).  Again, while these records (in combination with Dr. Haggins' records) show some objective abnormalities in her lower extremities, they do not readily suggest her impairments are medically equivalent to an "inability to ambulate effectively," as that phrase is defined in the regulations.  Notably absent from the medical records (as far as the undersigned can tell) is a medical professional opining on Plaintiff's ability to walk or observing her unable to effectively walk.  On the contrary, she was found to have a normal gait or denied an abnormal gait on multiple occasions in March 2018 (her gait was not discussed in other medical records).  (Tr. at 333, 336, 342).

The ALJ supported her decision with discussion of the medical evidence and concluded Plaintiff's limitations were not disabling and did not meet or medically equal a listed impairment.  *See* Social Security Ruling (SSR) 17-2p, 2017 WL 3928306 ("articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.").  In doing so, the ALJ also concluded Plaintiff's complaints were "not entirely consistent with the medical evidence and

other evidence in the record."  (Tr. at 20-23).  Plaintiff did not contest the ALJ's

subjective complaints determination.  As the ALJ noted, the medical records do not

support the degree of limitation Plaintiff suggests.  The medical records do not

readily demonstrate Plaintiff is unable to ambulate effectively, i.e. that she had

"insufficient lower extremity functioning . . . to permit independent ambulation

without the use of a hand-held assistive device(s)," or that her impairments in

combination are medically equivalent to the inability to ambulate effectively.

### 3.    The ALJ's Consideration of Obesity

Plaintiff argues the ALJ failed to discuss the impact her obesity had on her

residual functional capacity in accordance with Social Security Ruling (SSR) 02-

1p.[8]  She argues the ALJ overlooked "the devastating effects on the injured weight

bearing joints the excessive weight has had."  (ECF No. 12, PageID.528).

SSR 02-1p, 2002 WL 34686281, addresses the Agency's responsibility to

assess the severity and limitations arising from a claimant's obesity.  As noted by

the Sixth Circuit, it would be "'a mischaracterization to suggest that Social

Security Ruling 02-1p offers any particular procedural mode of analysis for obese

---

[8] The Commissioner contends SSR. 02-1p does not apply to this case because on May 20, 2019, the Social Security Administration rescinded and replaced SSR 02-1p with SSR 19-2p. However, SSR. 19-2p only applies to "new applications filed on or after the applicable date of the SSR."  SSR 19-2p, 2019 WL 2374244, at *5, n.14.  Plaintiff filed her application on March 22, 2018, before the effective date of the new SSR.  (Tr. at 16).  Thus, SSR 02-1p applies to this case.  The Rulings are not markedly different; the Commissioner's arguments equally apply to SR 02-1p.

disability claimants,' . . . [i]nstead [the ruling] provides that 'obesity, in combination with other impairments, 'may' increase the severity of the other limitations.'" *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006)). Thus, the ALJ's responsibility is to "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).

The Ruling also provides guidance for evaluating a claimant's obesity during the sequential evaluation. For example, in determining a claimant's RFC the Ruling provides,

> An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting ona [sic] regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity.

SSR 02-1P (2002 WL 34686281, at *6) (internal footnote omitted). The Ruling cautions, however,

> [W]e will not make assumptions about the severity or
> functional effects of obesity combined with other
> impairments.  Obesity in combination with another
> impairment may or may not increase the severity or
> functional limitations of the other impairment.  We will
> evaluate each case based on the information in the case
> record.

*Id.*  Thus, the Ruling does not relieve the plaintiff's burden of marshaling medical

evidence establishing work-related limitations.  "Plaintiff [has] the burden of

showing specifically how [her] obesity, in combination with other impairments,

limited [her] ability to a degree inconsistent with the ALJ's RFC determination."

*Leppien v. Comm'r of Soc. Sec.*, 2016 WL 3661851, at *7 (W.D. Mich. July 11,

2016).

Here, the ALJ expressly addressed Plaintiff's obesity and cited SSR 02-1p.

First, the ALJ found Plaintiff's obesity to be a severe impairment at Step Two,

despite the fact that Plaintiff did not allege obesity as a basis for disability in her

applications.  (Tr. at 18, 212).  Next, the ALJ discussed Plaintiff's testimony

regarding her obesity.  (Tr. at 20).  In the discussion of the medical evidence, the

ALJ provided the following:

> Despite obesity, a sedentary life style [sic], and
> complaints of heartburn, in March 2017, the claimant
> demonstrated no joint deformity, skeletal tenderness, or
> extremity edema, which was contrary to her testimony
> about the severity and limiting effects of her symptoms.
> The fact that she relied on only conservative treatment
> suggests that she had more effective symptom
> management than alleged (Ex. 2F/63/66/67).

. . . .

> Regarding the claimant's severe impairment of obesity
> (65 inches tall, 200 pounds), I have also considered
> obesity in accordance with Social Security Ruling 02-lp
> when evaluating her RFC. Obesity may increase the
> severity of the claimant's other physical impairments,
> including the symptoms of pain or functional limitations.
> The claimant has not alleged limitations attributed
> totally to obesity however, and the record does not
> demonstrate greater restrictions resulting from
> obesity than those in the residual functional capacity
> finding which limit the claimant to light work
> with additional limitations as outlined in the adopted
> RFC (Ex. 2F/71).

(Tr. at 21, 23).

The ALJ satisfied the requirement for evaluating obesity.  The ALJ cited

SSR 02-1p, indicated she considered Plaintiff's obesity in combination with her

other impairments, and she explained greater functional limitations were not

warranted to account specifically for obesity because the medical records do not

support greater limitation.

Importantly, plaintiff has not identified any additional limitations that should

have been incorporated in the RFC, but were not.  This absence of elaboration

"likely stems from the fact that [plaintiff] failed to present evidence of any

functional limitations resulting specifically from her obesity."  *Essary v. Comm'r

of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004).  There is "scant evidence" in

the record that plaintiff's obesity causes her physical limitations.  *See Grech v.*

*Colvin*, 2015 WL 2354802, at *3 (E.D. Ky. May 15, 2015) ("In fact, other than a passing reference to Plaintiff being obese or providing a record of her height, weight and BMI on her medical charts, her providers provided no specific discussion of Plaintiff's obesity or how it impacts her functioning.").  Indeed, other than citing a physician's record noting her weight (192 pounds) (Tr. 232), Plaintiff cited to no record evidence to demonstrate the effects of her obesity were greater than stated in RFC.[9]  "[A]ny findings regarding the effects of obesity must be based on evidence in the record."  *Gipson v. Colvin*, 2016 WL 4473796, at *3 (E.D. Ky. Aug. 22, 2016).  The ALJ may not make assumptions about the severity or functional effects of obesity, otherwise he or she would be required to render a medical opinion, which is not permitted.  *Id.* (citing *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009)).

For these reasons, Plaintiff's last argument for remand is without merit.

**F.   Conclusion**

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

---

[9] Instead, Plaintiff again cited a website listing the common effects of obesity on the joints, (ECF No. 15, PageID.563-64), but did not point to any medical findings related to obesity in the record.

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

## II.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 26, 2021                    s/Curtis Ivy, Jr.
                                           Curtis Ivy, Jr.
                                           United States Magistrate Judge